The charter of the Memphis Charleston Railroad Company gives power "to do all lawful acts properly incident to a corporation, and necessary and proper to the transaction of the business for which it is incorporated," and "that said company shall possess such additional powers as may be convenient for the due and successful execution of the powers granted in this charter." To induce a subscription of stock to the latter, the Memphis 
Charleston Railroad Company entered into an agreement with complainant company that "these subscriptions are made with the understanding that the Memphis Charleston Railroad Company will guaranty that the subscribers shall receive not less than eight per cent. dividends per annum on the stock paid in;" the board of directors resolving "that this company [Memphis Charleston Railroad] will and doth guaranty that the subscribers to the capital stock of the Memphis Grain Package Elevator Company shall receive not less than eight per cent. dividends per annum on the stocks paid in respectively by them. * * *" This bill is filed to enforce the contract.
It is clear that by the terms of the charter the railroad company is authorized to employ all appliances necessary to the promotion of the legitimate objects and purposes of the corporation. It may as properly build or rent elevators for purposes of loading and unloading as it may hire labor, buy or rent trucks, wagons, etc. To do such things falls strictly within the powers granted. But does the charter confer a power to go beyond the employment of the necessary means, and guaranty a profit to persons, firms, or corporations engaged in their peculiar business?
In Davis v. Railroad Co., 131 Mass. 259, Chief Justice GRAY, after saying the reported cases on the subject are so numerous that he will refer to comparatively few of them, adds: "A corporation has power to do such business only as it is authorized by its act of incorporation to do, and no other. It is not held out by the government, nor by the stockholders, as authorized to make contracts which are beyond the purposes and scope of its charter. It is not vested with all the capacities of a natural person, or of an ordinary partnership, but with such only as its charter confers. If it exceeds its chartered powers, not only may the government take away its charter, but those who have subscribed to its stock may avoid any contract made by the corporation in clear excess of its powers. If it make a contract manifestly beyond the powers conferred by its charter, and therefore unlawful, a court of chancery, on application of a stockholder, will restrain the corporation from carrying out the contract; and a court of common law will sustain no action on the contract against the corporation. "Every person who enters into a contract with a corporation is bound, at his peril, to take notice of the legal limits of its capacity."
This is sound in reason and principle, and is the rule in this state. The case before us falls strictly within it. The obligation to guaranty a profit cannot be construed to mean a hiring of labor or machinery for railroad purposes. While it may, by implication, be understood as an agreement to employ the elevator to do necessary work for the railroad company, it goes beyond, and assumes a ________ of a large per cent. There is nothing in the obligation which expressly binds the corporation to use the elevator, nor is it important to its owners whether it does use it. The guaranty of 8 per cent., if good at all, is good without a use of the elevator. The corporation is only concerned in its own success, and authorized only to do such things as are necessary to *Page 54 
the transaction of its business, — the business for which it was incorporated. In no part of the grant of power is that of guarantying the success of another institution, person, or corporation to be found in either expression or implication. Decree affirmed. *Page 55